[Cite as *State v. Lewis*, 2025-Ohio-4520.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case Nos. 25CA3 |
| | | 25CA4 |
| Plaintiff-Appellee, | : | 25CA5 |
| v. | : | DECISION AND |
| | | JUDGMENT ENTRY |
| Johnny D. Lewis, | : | |
| Defendant-Appellant. | : | **RELEASED 9/25/2025** |

_____

APPEARANCES:

Karyn Justice, Esq., The Law Office of Karyn Justice, LLC, Portsmouth, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Steven K. Nord, Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.
_____

Hess, J.

{¶1}   In consolidated appeals, Johnny D. Lewis appeals from judgments of the Lawrence County Common Pleas Court convicting him of multiple counts in three cases. Lewis presents one assignment of error asserting that he did not knowingly, intelligently, and voluntarily enter a guilty plea.  For the reasons which follow, we overrule the assignment of error and affirm the trial court's judgments.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   On May 24, 2024, Lewis was in indicted in Case No. 24 CR 101 on one count each of felonious assault and aggravated burglary.  On May 31, 2024, the trial court conducted an arraignment hearing at which Lewis pleaded not guilty.  In addressing bond,

defense counsel told the court that Lewis "was using cocaine pretty seriously until he got arrested." The court set a $25,000 cash or surety bond, later reduced to $5,000, and a $50,000 recognizance bond.  The terms of bond included release to a qualified treatment provider and GPS monitoring. Lewis was released on bond, but on June 20, 2024, the State moved to revoke bond on the grounds that he had tampered with the GPS monitor, left the treatment facility, and had been booked in the Scioto County jail on two counts of theft of a motor vehicle.

**{¶3}**   On June 21, 2024, Lewis was indicted in Case No. 24 CR 121 on one count each of felonious assault, failure to comply with the order or signal of a police officer, and harassing a police dog or horse.  On July 29, 2024, Lewis was indicted in Case No. 24 CR 150 on one count each of tampering with evidence, vandalism, and failure to comply with the order or signal of a police officer, and two counts of grand theft of a motor vehicle. On September 4, 2024, the trial court conducted an arraignment hearing at which Lewis pleaded not guilty in both cases.   In addressing bond, defense counsel told the court that "part of the problem Mr. Lewis was suffering during all this time is he was having some manic episodes because he was…he's on medication." Counsel said that Lewis was getting medication in jail, but when he got released, the medication "was too slow in getting caught up with him in the facility he was in."  Counsel said, "[Y]ou can see how Mr. Lewis is acting today, he needs that medication.  Since he's been incarcerated, they've had him on it, they've kept him on it and that's crucial to him and without it he wouldn't even be sitting still here.  He would be running around the courtroom."  Counsel opined that getting Lewis "into some treatment where they can make sure that he gets his medicine . . . would make a world of difference in Mr. Lewis."  The court set a $250,000

cash or surety bond and $250,000 recognizance bond, which again included release to a qualified treatment provider.  At a September 25, 2024 pretrial hearing, the defense asked the court to reduce the bond, and the court denied the request.

{¶4}    At an October 9, 2024 pretrial hearing, defense counsel told the court that Lewis "takes lithium for some mental health issues," that "mentally lithium is a powerful medication," that Lewis "needs that," and that Lewis told him he was "not getting it at this time."  Counsel said, "I think that's going to affect his competency, as well."  The trial court granted counsel leave to file a not guilty by reason of insanity ("NGRI") plea and ordered an evaluation of Lewis's competence to stand trial and an evaluation of his mental condition at the time of the commission of the offenses.

{¶5}    On November 20, 2024, the trial court conducted another pretrial hearing. The court and parties indicated they had received reports regarding Lewis's competency and mental condition at the time of the offenses charged. The reports concluded that Lewis did not meet NGRI criteria and was competent to stand trial.  The competency report noted it would be important that Lewis maintain his compliance with psychotropic medication to maintain his competency. The parties told the court they had no objection to the reports and based on the stipulation of the parties, the court ordered that the reports be entered into the record under seal.  Then, the court and parties discussed discovery and the trial date.  After the court set a trial date, defense counsel told the court that Lewis wanted him "to make a Motion for Protection in Bond."  Counsel stated that "we know from the competency evaluation he does have some mental health issues" and that when counsel spoke to the doctor who had written the reports on the phone, the doctor stressed "that it's important that he continue to get his medication properly and have the proper

mental health care."  Counsel stated, "I  know that can be difficult to do in the jail.  I think if we could get him out on an ankle monitor and put him in someplace like Mended Reeds where they can do the mental health treatment it would better serve him, and we'd make sure that he maintains his competency so we can get this case to trial."  The State opposed any bond reduction, and the court did not modify bond.

{¶6}   On January 29, 2025, pursuant to a negotiated plea agreement with a jointly recommended sentence, Lewis pleaded guilty in Case No. 24 CR 101 to the felonious assault count, in Case No. 24 CR 121 to the felonious assault and failure to comply with the order or signal of a police officer counts, and in Case No. 24 CR 150 to all counts.  He executed a plea of guilty form in which he answered a series of questions.  In response to the question, "Do you understand what is taking place here?" he answered, "Yes."  He also gave answers indicating he understood various matters such as the nature of the charges and maximum penalties involved and was making the plea of his own free will. Lewis also executed a waiver of jury trial form in which he indicated that he understood that he had a constitutional right to a jury trial and was voluntarily waiving that right.

{¶7}   During the plea colloquy, Lewis told the court that his signature was on the plea of guilty form, that he provided all the information in the form, and that it was truthful to the best of his knowledge.  The court reviewed the waiver of jury trial form with Lewis. The court reviewed the charges to which Lewis was pleading guilty and maximum possible sentences. The court asked Lewis if he was "currently under the influence of any drugs, alcohol, or any other mind-altering substances," and he said, "No, ma'am."  The court reviewed constitutional rights Lewis would waive by pleading guilty, and Lewis indicated that he understood.  The court reviewed sentencing related matters, which

Lewis indicated he understood. The court asked if anyone had threatened Lewis to enter the guilty pleas or made any promises or agreements other than those stated on the record, and Lewis indicated no one had. The court asked if Lewis understood that by pleading guilty "you're making a complete admission you committed the allegations contained in the indictment," and he said, "Yes, Your Honor." He also indicated that he understood that if he entered guilty pleas the court could proceed with judgment and sentencing that day and that the court was not bound by any sentencing recommendation. Lewis also indicated that his guilty pleas were of his own free will.

{¶8} The court found that the guilty pleas were knowing, intelligent, and voluntary and accepted them. The court found Lewis guilty of the counts to which he pleaded guilty, dismissed the remaining counts, and sentenced him. Lewis filed a notice of appeal in all three cases, and we granted his motion to consolidate the appeals.

## II. ASSIGNMENT OF ERROR

{¶9} Lewis presents one assignment of error: "Mr. Lewis did not knowingly, intelligently and voluntarily enter a guilty plea."

## III. LAW AND ANALYSIS

{¶10} In the sole assignment of error, Lewis contends that he did not knowingly, intelligently, and voluntarily enter a guilty plea. Lewis maintains that the trial court erred by accepting his guilty pleas without "ensuring that he was competent to proceed." Lewis asserts that his mental status was "raised throughout the proceedings." He admits that the competency report was stipulated to by the parties and that the court ordered it be entered into the record under seal, but he asserts that the trial court made no oral or written ruling on his competency. He claims "[t]he court and the parties proceeded with

the matter, presuming the report indicated he was competent, but no such finding exists in the record." He asserts during the plea colloquy, he "told the court he was not under the influence of any mind-altering substances," and "[l]ithium is a mind-altering substance." He asserts that the trial court "made no inquiry" about whether he "was receiving medications for his mental health conditions, including lithium, which would affect his mental status." Therefore, he asserts that "[i]t is unclear from the record if he was receiving his medication" and "was competent to proceed," so his guilty plea "was not entered knowingly, intelligently, and voluntarily in violation of his due process rights and Crim.R. 11."

**{¶11}** "Because a . . . guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10. "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.* "'An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards.'" *State v. Sillman*, 2024-Ohio-3363, ¶ 22 (4th Dist.), quoting *State v. Moore*, 2014-Ohio-3024, ¶ 13 (4th Dist.).

**{¶12}** "Ohio's Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas." *Dangler* at ¶ 11. Crim.R. 11(C)(2) states:

> In felony cases the court . . . shall not accept a plea of guilty . . . without first addressing the defendant personally . . . and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Lewis does not assert that the trial court failed to provide any information required by Crim.R. 11(C)(2), and he acknowledges that "[t]he court asked him several questions pursuant to" the rule. However, he suggests that the trial court could not have determined that he understood the consequences of his guilty pleas because it failed to ensure he was competent.

{¶13} "[T]he '[c]onviction of an accused while he or she is legally incompetent is a violation of due process.'" *State v. McHargue*, 2024-Ohio-924, ¶ 6 (4th Dist.), quoting *State v. Merryman*, 2013-Ohio-4810, ¶ 14 (4th Dist.). "The constitutional standard for assessing a defendant's competency to enter a guilty plea is the same as that for determining his competency to stand trial." *State v. Montgomery*, 2016-Ohio-5487, ¶ 56, *reconsideration granted in part on other grounds*, 2016-Ohio-7677, citing *Godinez v. Moran*, 509 U.S. 389, 396, 398-399 (1993). "The defendant must have a '"sufficient present ability to consult with [the defendant's] lawyer with a reasonable degree of rational understanding" and [have] "a rational as well as factual understanding of the proceedings against [the defendant].""" (Second bracketed text in original.) *Id.*, quoting *Godinez* at 396, quoting *Dusky v. United States*, 362 U.S. 402 (1960). Ohio has codified the competency test in R.C. 2945.37(G) as follows:

A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

**{¶14}** "Under this subjective test, if a defendant is capable of understanding the nature and objective of the proceedings and assisting in the defense, then the defendant is competent to stand trial." *McHargue* at ¶ 7, citing *State v. Smith*, 2021-Ohio-2866, ¶ 16 (4th Dist.). "A defendant with mental illness or intellectual deficiencies may still be competent to stand trial." *Id.*, citing *State v. Lechner*, 2019-Ohio-4071, ¶ 27 (4th Dist.). "'Incompetency must not be equated with mere mental or emotional instability or even with outright insanity.'" *Lechner* at ¶ 27, quoting *State v. Bock*, 28 Ohio St.3d 108, 110 (1986). "'A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.'" *Id.*, quoting *Bock* at 110.

**{¶15}** "'R.C. 2945.37(G) creates a rebuttable presumption that a defendant is competent to stand trial.'" *Montgomery* at ¶ 55, quoting *State v. Barton*, 2006-Ohio-1324, ¶ 56. "[A] competency determination is necessary only when a court has reason to doubt the defendant's competence." *State v. Lawson*, 2021-Ohio-3566, ¶ 48, quoting *Godinez* at 401, fn. 13. "A trial court must hold a competency hearing if a request is made before trial, R.C. 2945.37(B), or if the record contains sufficient indicia of incompetence that an inquiry is necessary to ensure that the defendant is accorded his rights to due process and a fair trial." *Montgomery* at ¶ 55, citing *State v. Were,* 94 Ohio St.3d 173, 175 (2002), citing *State v. Berry,* 72 Ohio St.3d 354, 359 (1995). The defendant bears the burden to

prove his or her incompetency by a preponderance of the evidence. *McHargue* at ¶ 9, citing *State v. Roberts*, 2013-Ohio-4580, ¶ 89, citing R.C. 2945.37(G). "[I]f the court . . . finds that the defendant is competent to stand trial, the defendant shall be proceeded against as provided by law." R.C. 2945.38(A).

**{¶16}** "However, a defendant may stipulate to the contents of the competency report and may also waive the competency hearing, or at least may elect not to introduce evidence." *McHargue*, 2024-Ohio-924, at ¶ 17 (4th Dist.). "In such a situation, the presumption of competency remains unrebutted." *Id.* In addition, "[a]lthough the trial court must ensure a defendant is competent before accepting a plea, the competency statutes do not mandate the type or manner of findings the trial court must make and they do not expressly require that the trial court issue a journal entry finding a defendant competent." *Id.*

**{¶17}** Lewis has not demonstrated that his guilty pleas were not knowing, intelligent, and voluntary because the trial court failed to ensure that he was competent before accepting them. Although the defense raised the issue of competency during the proceedings, once the competency report was received, the defense did not object to it or maintain the claim that Lewis was incompetent. Instead, the defense stipulated to the admission of the report under seal. The trial court did not expressly state that the competency evaluation resulted in a finding that Lewis was competent to stand trial, but the court admitted the competency report under seal, and the report concluded Lewis was competent to stand trial. Moreover, it is clear from the record that the parties and court understood Lewis to be competent. Immediately after admitting the report, the court and parties discussed discovery and a trial date. Defense counsel then suggested that a bond

modification would ensure Lewis "maintains his competency" because it was more likely that he would continue to get his medication and mental health care if he was released to a facility which provided mental health treatment than if he remained in jail.

{¶18} Prior to the change of plea hearing, the defense made no new claim of incompetency, and nothing occurred during the plea colloquy which suggested that Lewis was incompetent to enter a guilty plea or that the court needed to make further inquiries on the subject. Before the colloquy, Lewis executed a form indicating that he understood what was taking place and other matters, and during the plea colloquy, he told the court the information in the form was truthful to the best of his knowledge. The fact that Lewis told the court he was not under the influence of alcohol, drugs, or other mind-altering substances does not suggest that he was incompetent due to lack of receipt of lithium or any other medication used to treat a mental health condition. It indicates only that he was not deprived of clearness of mind or self-control because of drugs, alcohol, or other mind-altering substances. *See generally Black's Law Dictionary* (12th Ed. 2024) ("under the influence" means "deprived of clearness of mind and self-control because of drugs or alcohol"). Moreover, Lewis gave appropriate responses to the court's other questions, indicating he understood the matters the court explained and was entering the guilty pleas of his own free will.

{¶19} For the foregoing reasons, we overrule the sole assignment of error and affirm the trial court's judgments.

JUDGMENTS AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENTS ARE AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**